# CHRISTIAN SCHMIDT v. MARY McGILL.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILA-
DELPHIA COUNTY.

Argued January 16, 1888—Decided May 21, 1888.

In an action to recover damages for injuries received by a foot-passenger
when struck by a beer wagon at a city street-crossing, the questions of
negligence of the defendant in driving recklessly and of contributory
negligence of the plaintiff in not looking out for the approach of the
team, were raised by the testimony: *Held*,

1. That it was not error to refuse to charge that if the jury believed
that at the time of the accident the driver was traveling in an ordinary
manner, the defendant was not liable for an injury resulting from the
use of a public street.

2. That the request assumed the very point in controversy, the question
being: Was the driver traveling over the crossing in an ordinary man-
ner—that is, with the ordinary care requisite when passing a point such
as that where the accident happened? Waters v. Wing, 59 Pa. 211;
Goshorn v. Smith, 92 Pa. 435, and Baker v. Fehr, 97 Pa. 70, distin-
guished.

3. That at a city street-crossing, where both the team and the foot-
passenger have the right of way and both are required to exercise care,
the material question is, who was negligent, if either? and the solution
thereof is clearly for the jury and not for the court.

4. That, as the testimony was neither complex nor voluminous, par-
ticular reference to it in the charge to the jury was unnecessary, the
attention of the jury being clearly called to the law of the case.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK
and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 116 July Term 1887, Sup. Ct.; court below, No. 106
September Term 1884, C. P. No. 1.

On September 11, 1884, an action in case for negligence was
begun by Mrs. Mary McGill against Christian Schmidt, to re-
cover damages for personal injuries.

At the trial on March 28, 1887, it was made to appear that
on May 27, 1884, Mrs. McGill was crossing Eleventh street on
Susquehanna avenue, when she was struck by the pole of a
beer wagon driven up Eleventh street by John Foelker, an

Statement of Facts.

employee of the defendant. Susquehanna avenue runs east and west, and Eleventh street north and south. The team was passing from south to north; Mrs. McGill was walking from east to west on the north foot-way of Susquehanna avenue. She testified: "I had been to the meat store at Ninth and Susquehanna avenue. It was Tuesday morning, May 27, 1884. I started to go home and was walking along Susquehanna avenue. I was coming to the corner of Eleventh street, and I knew that the cars came down Eleventh street. I looked about and saw that the road was clear. I turned my head around a little to see whether cars or anything was coming. In an instant I was knocked down. The pole struck me on the leg. I was picked up. Mr. Dougherty stood me up. My leg went under, and I said: 'Oh, my leg is broke!' Dougherty hallooed to his barkeeper or somebody for a chair, and put me on it. I was then carried home. I laid down on the lounge down-stairs, until the doctor came. He said he would have to get another doctor, my leg was broke. He came back about five o'clock with the other doctor to set my leg. My suffering commenced then. I had to put my leg in a sand-box. I had the box on nine weeks. Then I was put in a hammock for three days, but that didn't do well and I had to go back to bed and put the box on again another week. After that I got up and put my clothes on. Gradually I got on crutches."

On cross-examination, she said: "I was going home on the north side of Susquehanna avenue. When I approached Eleventh street, I did not look down Eleventh street. There is a vacant lot on the southeast corner of Eleventh and Susquehanna avenue. I could have seen down Eleventh street half way to Diamond street but I did not look. I had a sunbonnet on. It came down over my face and was tied pretty tight. . . . . . I passed Dougherty on his own corner. I did not see the wagon then. Did not see the wagon at all. Did not hear it coming. I looked ahead and saw the road clear before me and then I looked up for the car. I looked straight across Eleventh street. Did not look up or down Eleventh street. I did not hear the wagon. If I had looked down Eleventh street, certainly I could have seen the wagon coming. Can't say whether I saw a car coming down Susquehanna avenue or not. Did not notice the car at all. Don't know exactly

Charge of Court below.

how far I had got across Eleventh street when I was struck. It all came so suddenly when I was struck. I told you before I don't know exactly where I was when I was picked up on the track. My foot kind of slipped out when I was struck. Can't say how I fell. I felt the pole strike me. As far as I can say it was the pole that struck me. I felt it. Something struck me. I could not say for sure that I was struck. Can't say whether I fell on a cobble-stone. I know the pole struck me. I did not stumble and fall as I know of."

John F. Dougherty testified: "Mrs. McGill was just crossing Eleventh street on north side of Susquehanna avenue. Saw wagon come at pretty good gait so as to strike her. I hallooed and threw up my left hand. He paid no attention. Came right on. Wagon struck her and knocked her about twelve feet or so. I ran to pick her up. She said, 'Oh, my leg is broke!' My wife or niece came out and brought a chair and I put Mrs. McGill on it. She said she was Mrs. McGill. I then took her home. Wagon came at a right fast trot for a beer wagon. Driver did not slacken speed when he came to crossing." Other eye-witnesses described the occurrence, and it was shown that the injuries received caused great pain and suffering and resulted in a permanent shortening of the plaintiff's right leg about one and three-fourths inches. At this time the street cars ran down Eleventh street.

On behalf of defendant, Fred. Foelker testified: "I had two horses. Was loaded about half full. I was going up Eleventh street towards Susquehanna avenue. I was driving easy. A car came around Susquehanna avenue and down Eleventh street. I turned out for it at the turnout, and then went on straight. I was into Susquehanna avenue before Mrs. McGill crossed the curb-stone. I saw her coming along Susquehanna avenue. I got to Susquehanna avenue before she got to curbstone. She saw the horses when they were about two feet away from her, jumped back and fell towards the right. She fell on the crossing-stone. The wagon was in the tracks. I turned out of the track to the west side of Eleventh street. She had a basket which fell out of her hand when she fell."

The court, BIDDLE, J., charged the jury and answered the defendant's point as follows:

Charge of Court below.

This is an action brought by Mrs. McGill against Christian Schmidt to recover damages for an injury inflicted by his driver. It is not denied that Foelker was Schmidt's driver at the time of the accident, so that if he was guilty of negligence, the defendant is the proper person to sue.

This accident occurred on a public highway, where both parties had a right to be, but both parties must exercise that right in an ordinary and reasonable manner. It is impossible to define their exact duties, and the ordinary and reasonable care must depend upon the circumstances of each particular case. There is no obligation on the part of persons driving along the public streets to haul up their horses and stop at every crossing. Nor must people look in every possible direction for vehicles approaching and cipher out how long it will take them to arrive at the crossing. Each must exercise reasonable and ordinary care. Of course, more caution must be used at crossings than at other parts of the highway, for that is where the stones are placed to cross. The obligation is mutual. Each must use reasonable and ordinary care.

This being an action for negligence, the plaintiff must establish that fact. If both parties are at fault, the verdict must be for the defendant. You should be satisfied that there was negligence on the part of one party alone.

The case has been gone over thoroughly by both counsel, and you have had the plans shown you. Mr. Dougherty and Miss Nagle both testify that the driver was on the other side of Susquehanna avenue when they first saw him, and he says so himself in his testimony. Now you must consider whether it was negligence for Mrs. McGill to attempt to cross then, and whether he should have stopped.

If the plaintiff establishes her case, you will consider the question of damages. The damages will be compensatory. I don't think there is any question of vindictive damages in this case. In considering the question of damages, you will take into account the direct expenses incurred, the loss of time, bodily suffering, and any incurable injury. These are the elements of the damages.

Of course, the mere fact of an accident is not proof of negligence. Your own common sense will tell you that.

Counsel for the defendant requests the court to charge the jury as follows:—

1. If the jury believe that at the time of the alleged accident the defendant's driver was traveling in an ordinary manner, the defendant is not liable for an injury resulting from the use of the public street.

Answer: Refused:[1]

The jury returned a verdict in favor of the plaintiff for $3,000. Judgment being entered, the defendant took this writ assigning as error:

1. The refusal of defendant's point.[1]

2. That the charge of the court was inadequate in this, that it did not refer to the facts proved at the trial, and did not direct the attention of the jury to the contributory negligence of the defendant in error.

*Mr. Joseph L. Tull,* for the plaintiff in error:

1. The refusal by the court to instruct the jury as requested by the defendant, amounted to a denial of the right of the defendant to the use of the highway, and to make him responsible for an injury while traveling in an ordinary manner. The driver was passing on that part of the street set apart for wagons, and where he had a right to be. He saw the plaintiff on the pavement approaching the crossing. He had a right to presume she saw him, and that his direction was across her path. She was still on the pavement when he got into Susquehanna avenue. Upon the plaintiff the law imposed the duty to look and notice whether any vehicle was coming along the highway, which had a right to be there, and if, when she reached the curb, she found she had not time enough to cross over in safety, it was negligence on her part to try to cross in front of the horses. Had she looked, she could have seen what must have been right before her eyes; if she did not look, she was negligent, and if she did, she was negligent in attempting to cross in front of the horses which she could plainly see: Sykes v. Packer, 99 Pa. 465.

2. The rate of speed had nothing to do with the accident. When the plaintiff attempted to cross, the horses were in the middle of the avenue, and had the driver been going at three miles an hour, the accident would still have happened; the plaintiff had only to make five steps to place herself in front of the horses, if it was true she was between the tracks when she

was struck. " The rate of speed would be immaterial, for, upon such a sudden appearance of the child on the track, no rate of speed, no matter how slow, could have saved it:" P. & R. R. Co. v. Long, 75 Pa. 257. Precaution is a duty only so far as there is a reason for apprehension: P. & R. R. Co. v. Hummell, 44 Pa. 379; Penn. R. Co. v. Morgan, 82 Pa. 134.

3. The point submitted raised the question of contributory negligence on the part of the plaintiff. While the court said, " If both parties are at fault the verdict must be for the defendant," yet the refusal of the point left the jury without any direction as to what would constitute negligence on part of the plaintiff. When the exercise of ordinary prudence and care on the part of the plaintiff would have prevented the accident, plaintiff was guilty of contributory negligence if she did not take all the care that prudence would suggest to avoid the injury: Lehigh V. R. Co. v. Greiner, 113 Pa. 600; Goshorn v. Smith, 92 Pa. 439; Baker v. Fehr, 97 Pa. 70. The point is in the language of the third point of defendant below in Waters v. Wing, 59 Pa. 211, and if its refusal was error in that case, it was error in this.

4. The failure of the plaintiff to look whether defendant's wagon was about to cross Susquehanna avenue, and the testimony of the driver that the pole of the wagon did not strike the plaintiff, but that the fracture was caused by a fall, were not referred to by the court. These facts, with the evidence that the fracture was on the opposite side of plaintiff's person from that upon which defendant's wagon was approaching, should have been submitted to the jury under proper instructions. The jury were not enlightened as to what their duties were, nor furnished with any sufficient guide for their action: Reeves v. Railroad Co., 30 Pa. 463; Jackson v. Payne, 114 Pa. 81.

*Mr. George H. Earle, Jr.* (with him *Mr. Richard P. White*), for the defendant in error:

1. The court explicitly said to the jury: " The accident occurred on a public highway, where both parties had the right to be, but both must exercise that right in an ordinary and reasonable manner." But we submit that the instruction requested in the defendant's point should have been absolutely refused. The request was objectionable, because ambiguous;

the jury might understand, if the point were affirmed, that it was a defence to travel a city street in an ordinary way, that is, on foot, by wagon, dray, etc., for any of these is an ordinary manner of traveling; or, they might understand that an ordinarily careful manner was meant by the point. Moreover, drivers of beer wagons cannot justify the reckless running down of citizens, by satisfying the jury that the average care of their class was very low and they had not fallen below it. The law is that every man must use reasonable care according to the circumstances, without regard to whether it is customary for others in his position not to do so.

2. True, counsel cites Waters v. Wing, 59 Pa. 211, in support of his point, but that case was decided twenty years ago, and the law on this subject has greatly advanced. The care to be exercised is now held to be that which careful drivers are accustomed to use; hence a driver who fails to exercise such care, and thereby injures another, is liable: Whart. on Negligence, § 820; McIlvaine v. Lantz, 100 Pa. 589; Railroad Co. v. Richardson, 91 U. S. 469; Bailey v. Railroad Co., 107 Mass. 496; Lyman v. Railroad Co., 114 Mass. 88.

3. Whoever drives horses along the streets of a city, is bound to anticipate that travelers on foot may be at the crossing, and must take reasonable care not to injure them. He is negligent whenever he fails to look out for them, or when he sees them and does not so far as in his power avoid them: Murphy v. Orr, 96 N. Y. 14; Pass. Ry. Co. v. Foxley, 107 Pa. 542; Lombard etc. Ry. Co. v. Steinhart, 2 Penny. 358; West Phil. Pass. Ry. Co. v. Mulhair, 6 W. N. 508.

4. In measuring the plaintiff's duty, it is to be remembered that she was entitled to act on the assumption that the defendant would observe those duties; that is, that he would drive at an ordinary gait, would check his speed at every crossing, and would vigilantly look ahead: P. & R. R. Co. v. Hummell, 44 Pa. 370; Shupleigh v. Wyman, 134 Mass. 118. It follows, that the plaintiff's testimony, that she first looked about and saw that the road was clear, and turned her head around a little to see whether the car or anything was coming, and then looked straight across and did not look up or down, fully establishes care on her part: a case in point, with the sun-bonnet in it, is Shea v. Reams, 36 La. Ann. 969.

OPINION, MR. CHIEF JUSTICE GORDON:

We have before us two assignments of error for our consideration: the first to the court's answer to one of the defendant's points, and the other to the charge. The defendant requested the court to rule that " if the jury believe that at the time of the alleged accident, the defendant's driver was traveling in an ordinary manner, the defendant is not liable for an injury resulting from the use of the public street." This request was refused. It is also alleged that the charge of the court was inadequate in this, that it did not refer to the facts proved at the trial, and did not properly direct the attention of the jury to the evidence tending to establish contributory negligence on part of the plaintiff below.

We are of the opinion that neither of these assignments can be sustained. The first, because it assumes the very point in controversy. The question was, Was the driver of the beer wagon traveling over the public crossing in an ordinary manner?—that is, with the ordinary care which was requisite when passing a point such as that where the accident happened. Common sense will teach any person of ordinary mental calibre, that what is ordinary care must depend largely upon circumstances. Trotting a team of horses at a " fast rate for a beer wagon," may be well enough along the open street, whilst on the other hand, it may be gross carelessness when passing a crossing where foot passengers are constantly to be expected, and among them many old people and children. As the learned judge, before whom this case was tried, well said, under such circumstances both parties are held to ordinary care, and the careless party must suffer the consequences resulting from his own carelessness.

Here was a place where both parties must be on the lookout; the one for passing teams, and the other for foot passengers. Both have the right of way, and both must be equally cautious. How then, is it possible to apply the doctrine found in Waters v. Wing, 59 Pa. 211, to the contention in hand? The accident in that case did not occur at a crossing, but on the open road. The plaintiff's son, on horseback, was approaching the defendant, who was driving his buggy along the highway, which was abundantly wide for the safe passage of both, and the former ran his horse so hard against one of

the shafts of the buggy as to instantly kill it. Thus, whilst the rule cited was altogether proper for the case to which it was applied, it would be altogether improper for the case in hand. Nor are the cases of Goshorn v. Smith, 92 Pa. 435, and Baker v. Fehr, 97 Pa. 70, more in point than the one cited, for in neither did the accident happen through the negligence of the defendant. In the one, the plaintiff, unexpectedly to the driver of the wagon, by which he was injured, moved suddenly in the way of the coming team, and in such a manner that the defendant could neither anticipate nor guard against the accident. In the other, Fehr, the deceased, was struck and killed by a passing ice wagon. He had just got off the front platform of a street car, whilst the wagon was passing; several persons endeavored to warn him of his danger, and the driver did what he could to stop his mules, but Fehr either did not hear, or did not heed the warnings, and backed or walked directly against one of the mules, and was killed. To discover the analogy between these cases, and the case under discussion, is beyond our power; hence we conclude that it does not exist. Here is an accident at a public crossing, where both team and foot passenger had the right of way, and where both were required to use care. Who, then, was negligent, if either? was the natural and material question, and the solution thereof was clearly for the jury, not for the court.

Nor can we discover any defect such as that complained of in the learned judge's charge. It is true, he does not comment specially on the evidence, and calls attention only to such of it as indicates the position of the wagon when the witnesses first saw it. But the testimony was neither complex nor voluminous; therefore, particular reference to it was unnecessary. The attention, however, of the jury was very clearly called to the law governing the case. The plaintiff must establish the fact of negligence on part of the defendant's driver; if both parties were in fault, the verdict must be for the defendant; they must be satisfied that there was negligence by the one party alone. This was surely so plain that the ordinary juryman could not fail to understand it, or if he did so fail, it was not the fault of the court.

The judgment is affirmed.